99 F.3d 401
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Han Sho WEI a/k/a Sylvia Han, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 95-2291.
 United States Court of Appeals, Second Circuit.
 Dec. 13, 1995.
 
 1
 FOR APPELLANT: Ronald L. Kuby, Kunstler and Kuby, New York, NY.
 
 
 2
 FOR APPELLEE: Alan Vinegrad, Ass't U.S. Att'y, E.D.N.Y., Brooklyn, NY.
 
 
 3
 E.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 Present: McLAUGHLIN, LEVAL, Circuit Judges, and PARKER, District Judge.*
 
 
 6
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was submitted.
 
 
 7
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 8
 Han Sho Wei ("Han") participated in a conspiracy to import and distribute heroin into the United States. Pursuant to a standard proffer agreement, Han met with the government and provided information about the drug-trafficking activities of her boyfriend, Carlos "Tito" Bodden, and several of Han's customers. Subsequent to those meetings, a proposed plea agreement was drafted, in which Han agreed to plead guilty to conspiracy to distribute an unspecified amount of heroin, and the government agreed to move the district court for a reduction in sentence pursuant to U.S.S.G. § 5K1.1. Han signed the agreement, but the prosecuting attorney did not (although the supervisor did). Just before Han was scheduled to enter her plea, the government learned of a phone conversation, monitored from the Metropolitan Correctional Center the night before, in which Han told one of her sons to tell Tito to "take care." According to the government, when Han was asked about the conversation, she confessed to making the call, and admitted that she intended the phrase "take care" as a warning to Tito to flee the jurisdiction. Han, however, claims that her message was not a covert warning, and that she never confessed otherwise. Based on the phone conversation, the government refused to sign the plea agreement, and the plea proceeding was cancelled.
 
 
 9
 On the day Han's trial was scheduled to begin, Han and the government reached a new agreement in which she agreed to plead guilty to conspiracy to possess with intent to distribute over one kilogram of heroin. This agreement further provided that Han would not seek a downward departure. The government agreed not to oppose a downward adjustment for acceptance of responsibility, and not to seek an upward departure based on the quantity of heroin involved. When she entered her plea in the Eastern District of New York (Raymond J. Dearie, Judge ), Han acknowledged under oath that she had reviewed the agreement with her attorney, that she understood all of its terms, and that it contained all the promises that had been made by the government in connection with her plea. She also stated that her plea was voluntary. Han was sentenced to 151 months' imprisonment. She did not appeal from her conviction or sentence.
 
 
 10
 Han subsequently filed a petition, pursuant to 28 U.S.C. § 2255, which the district court dismissed. Han appeals, arguing that: (1) the government's failure to move for a § 5K1.1 departure denied her due process; and (2) her counsel was ineffective because he allowed the first plea agreement to be rescinded, and allowed Han to relinquish her right to move for a downward departure based on family circumstances.
 
 
 11
 1. Han argues that the government's failure to move for a § 5K1.1 departure denied her due process. We disagree. U.S.S.G. § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. Section § 5K1.1 "gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted." Wade v. United States, 504 U.S. 181, 185 (1992) (emphasis added). Once the government uses its § 5K1.1 discretion as a bargaining chip in the plea negotiation process, however, that discretion is circumscribed by the terms of the agreement. United States v. Conner, 930 F.2d 1073, 1075 (4th Cir.), cert. denied, 502 U.S. 958 (1991). It is the trial court's obligation to determine whether "the government has in fact agreed to make the [§ 5K1.1] motion in return for substantial assistance, and, if so, whether the defendant has satisfied [her] contractual obligations." Id.
 
 
 12
 Here, the information that Han provided to the government was not induced by the government's promise to issue a § 5K1.1 letter; Han supplied that information pursuant to a standard proffer agreement, which contained no such promise. The initial plea agreement, which did contain a provision for a § 5K1.1 motion, was drafted after Han provided that information, and was not signed by the trial assistant. Under the second agreement, which was signed by all parties, the government did not agree to move for a departure pursuant to § 5K1.1. Thus, there can be no contention that the defendant cooperated in reliance on the promise contained in the plea agreement. Furthermore, given the defendant's telephone message to Tito to "take care," the government had a good faith basis to refuse to move for a downward departure under § 5K1.1, regardless whether the defendant's true purpose was to warn the target of her cooperation or merely to send an innocent salutation. Accordingly, the defendant was not prejudiced by the loss of the cooperation agreement.
 
 
 13
 2. Han also asserts that she was denied effective assistance of counsel because her attorney failed to challenge the government's refusal to make a § 5K1.1 motion, and failed to seek a downward departure based on her family circumstances. In order to establish that an attorney's performance was constitutionally ineffective, petitioner must show that: (1) counsel's performance was so deficient that the representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the result would have been different. See Strickland v. Washington, 466 U.S. 668, 687-88, 694-95 (1984). In our view, the record does not support Han's argument that she was denied effective assistance of counsel.
 
 
 14
 The decision of the district court is AFFIRMED.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation